All right, our next case this morning is McIntyre v. United States Indian Health Service, number 245148. Counsel, you may proceed. Thank you, Governor. Daniel Gamino, my privilege to represent Dr. Robert McIntyre, who is present, seated in the front row there. Dr. McIntyre is an allopathic physician. He was an independent contractor working at IHS. In retaliation for him reporting severe misconduct at IHS, he was removed from his position. He was placed there by a placement company called Vista Staffing. There was a contract, and the case involves two different contracts below. The first contract was between Dr. McIntyre and Vista, and that was the contract that he had worked under for approximately 10 years. He served under that contract, and the contract has a couple of provisions there about cancellation of placement of the doctor. Could you just tell us what the other contract is? Yes. The other contract is the procurement contract between IHS and Vista Staffing. Where is that contract? Is it in the record? It is not in the record. The case below was dismissed before there was a pretrial discovery, so the procurement contract between IHS and Vista is not in the record. How are we supposed to consider arguments about that contract if we don't have the contract? We don't have the contract, but the counsel for the defense has raised the defense of sovereign immunity. As the court is aware, there are congressional limitations on sovereign immunity. It is not an absolute doctrine. One of the limitations and exceptions to sovereign immunity is under what's called the Tucker Act, and the court below recognized the possible application of the Tucker Act. But you didn't plead a Tucker Act claim. It's in their opinion. Did you plead a Tucker Act claim? Did you attempt to plead a Tucker Act claim in your complaint? The Tucker Act was specifically not mentioned in the complaint. The complaint under Federal Rule 8, short and plain statement of the case, and we put in facts that we think were sufficient to indicate that. The court below clearly recognized that the Tucker Act may be in play. It is a procurement contract. When you read the statutes on the Tucker Act, it talks about any procurement contract that may be reviewed, and it is an exception to sovereign immunity that's been raised by IHS. Even though it is not in the record, it has been referred to by the court below in their opinion, and if the case is remanded back to the court, then it can be produced and it can be reviewed. Are you in the right court for that? Excuse me? Tucker Act. I'm over here. The Tucker Act claim, are you in the right court to make that claim? We are in the right court, Your Honor, for this reason. The court below already has one contract dispute in front of it, and that's the contract that's in the record between Dr. McIntyre and VISTA, and that contract is in dispute. The lower court has jurisdiction over that. There is a statute, Title 28, Section 1367, which says if a lower court has jurisdiction over a case, then it has jurisdiction over the entire case and controversy over anything that might impact or be reflected in that. Under that statute, the lower court does have authority to review under the Tucker Act that contract and also the contract between IHS and VISTA. Do you have any case examples where a court, other than the Federal Claims Court, has exercised jurisdiction? I do not have a specific precedent, Your Honor. Most of the cases that come before the Federal Court of Claims under the Tucker Act are specifically on a federal procurement contract of some kind and some dispute, and typically there's no other parties involved. In this case, there is another party involved and another contract is involved, and that's the one between Dr. McIntyre and VISTA. And the contract that is in the record between them requires, when Dr. McIntyre was practicing medicine there, if IHS wanted to remove him under the VISTA contract under Paragraph 4, IHS must provide a reasonable finding of either professional incompetence or personal conduct. That's in Paragraph 4 of the contract. The evidence shows that in what I call the non-notice notice that IHS sent to VISTA, it's one paragraph from a contracting specialist. It has only very general language about his basis for his removal, and it does not specify anything that gives a reasonable finding of professional incompetence or personal conduct. Now, Counsel, you're now back to talking about the first contract, the one between Dr. McIntyre and VISTA, correct?  All right. I may have missed it, but it doesn't seem like – well, you're alleging breach of contract based on that contract in the complaint, and you're alleging breach of the implied covenant of good faith and fair dealing based on that contract. You've got two things going on there. In your opening brief, it doesn't seem like you're making your breach of contract argument there. You get to it in your reply brief, but am I not reading that correctly? Well, what we were attempting to argue was the failure of VISTA to honor their own contract and to point out that they breached their contract with Dr. McIntyre. VISTA is not able to remove Dr. McIntyre unless there is a reasonable finding by the client of some kind of professional incompetence or personal conduct. There was no evidence of that presented to VISTA. All VISTA received is the one paragraph, non-notice notice, that said, well, he doesn't get along with staff or general language of that. There's not a single evidence presented to VISTA of any kind of professional incompetence. The notice came from a contracting specialist, not from a physician who could knowledgeably address the practice of Dr. McIntyre and whether it was professional or not. It did not come from an executive who had some evidence of the staff unrest or personal conduct failings. Where in this agreement, the placement agreement between VISTA and Dr. McIntyre, where does that impose a duty on VISTA? I'm not talking about IHS. I'm talking about VISTA to investigate the reasons that the clinic let him go. Right. IHS has the duty to provide. I didn't ask about IHS. I asked about VISTA because paragraph 23 says that a company may terminate this agreement on any or all placements immediately by oral or written notice in the event of so forth and so on or the request by a client that a professional be removed for any reason during the term. That is what paragraph 23 says at the end, and the court needs to recall any basic rule of statutory construction or contract construction. The general is controlled by the specific. Paragraph 23 that Justice just referred to does have general language that a client may make a request for any reason. It is governed by the specific language of paragraph 4. That's the language that says what the client must report, and they cannot report a frivolous reason or any other reason. They have to report a reason of professional competence or personal conduct, and they utterly failed in their non-notice notice to bring any of those allegations regarding Dr. McIntyre or his practice. There's no allegation that he misdiagnosed, he ordered the wrong drugs, he did not have proper follow-up. There's nothing about his medical practice that is alleged, and there's nothing in any detail at all that would lead anybody to believe that there's a reasonable finding of some kind of personal conduct issue. So is it your position that the any reason language in paragraph 23 is just on its face, contrary to the implied covenant of good faith? In addition to, yes, in Utah, of course, the court recognized Utah, any contract has an implied covenant, good faith and fair dealing, just like you said. I think that impacts paragraph 23, and I think also what impacts paragraph 23 is the more specific language of paragraph 4. If IHS wants to remove someone under the VISTA contract, they must present a reasonable finding of some kind of professional incompetence or personal conduct issue, and they never did present that. VISTA went ahead and acted without that information and that notice from IHS. VISTA had a duty to Dr. McIntyre under paragraph 4 to not remove him until a client comes along and gives reasonable finding that there's some kind of professional competence or personal conduct. They never got that. On the Utah covenant of good faith and fair dealing, do you have any cases that say that includes a duty to investigate the reasons? I've not seen a case that says that. I don't know that there's a case that directly involves these facts. Now, the lower court agreed. I know there aren't any that directly involve these facts, but are there any that generally say in Utah the covenant of good faith and fair dealing, the implied covenant, includes a duty to investigate the reasons for a firing? I don't know that any of them go as far as a duty to investigate. Isn't that what you're asking us to do? No. I think the only thing we're asking is for VISTA to follow their own contract and make an inquiry as to the reasonable finding. That can be done by a phone call to get more information. It can be done by an email to get down to the specifics of what is the problem. You don't have to have, in my opinion, full investigation that goes on for months and months. But VISTA, under that contract, Paragraph 4, needs to receive a reasonable finding of some kind of professional competence or personal conduct, and VISTA never received that. There's none in the record. The only thing in the record is the one paragraph non-notice notice, and that is not sufficient to remove Dr. McIntyre. It may be sufficient to trigger VISTA to make some kind of inquiry to see what was the reasonable finding. That was not done by VISTA. That's the breach of the contract between VISTA and Dr. McIntyre. Dr. McIntyre was there a couple of weeks after the notice of firing. Is that right? There was a short period of transition, yes. And how does that factor in with the contract language or anything else? I don't know, and there's no evidence of how IHS did the timing of when he would actually leave. But the breach happened when the decision was made that Dr. McIntyre was going to be removed by VISTA. Well, if it's a two-week interval from the time that he's notified and he's actually gone, does that plug into the contract, these different provisions on how people get fired? Does it help us to isolate to one or the other? In my opinion, no. I think the contract is specific on Paragraph 4 and Paragraph 23, and whether from the time they give notice of discharge or removal until you actually leave, I don't think is material respectfully. And I think the breach that happened here was VISTA's failure to follow through and to follow and enforce its own contract in Paragraph 4 and 23. And I appreciate the Court's attention. I'd be glad to answer any other questions. Thank you. Thank you, Counsel. May it please the Court. I'm Rachel Parilli for the United States, representing the United States Indian Health Services. My co-defendants and I have agreed to split our time evenly before this Court. I hope it works out that way. Sovereign immunity protects the United States from suits such as the plaintiff's. The government may waive sovereign immunity, but such a waiver must be unequivocally expressed in statutory text and will not be implied. Counsel, can I ask you a threshold question about the defendant? So you make an observation that IHS is not the proper defendant. Yes. And it should have been the United States or the Secretary of Health and Human Services. Is it just your position that we should just plug in the United States as we proceed to adjudicate this case? Yes. The Court can deem the United States as a defendant in this case, as the United States Indian Health Service is an agency of the United States. And that agency is entitled to sovereign immunity just as the United States is. The plaintiff has assorted or asserted a variety of claims against the United States to try to obtain jurisdiction on the United States. None of them are successful. First and foremost, he alleges in his complaint this is an action in breach of contract. If you take the plaintiff's complaint at his word, the first words in his entire complaint are this is an action in breach of contract, then the Federal District Court does not have jurisdiction. Jurisdiction would lie with the Court of Federal Claims pursuant to the Tucker Act, as the Court has discussed. How do you respond to counsel's argument that because he has claims against VISTA and there's jurisdiction over those, that that brings the Tucker claim under our jurisdiction under 28 U.S.C. 1367? How do you respond to that? Concurrent jurisdiction can be established, but it has to be established against the United States, not against a co-defendant. There's no claim against the United States that establishes that concurrent jurisdiction. Simply because there is a claim against a co-defendant doesn't mean that their jurisdiction is established against the United States and the United States' sovereign immunity is waived, giving the court jurisdiction outside of the Tucker Act. There has to be a valid claim against the United States to loop in the Tucker Act claim. Yes, to establish the concurrent jurisdiction. It doesn't work if it's the claim against VISTA. That's correct, Your Honor. Okay. So why shouldn't we transfer the Tucker claim to the Federal Claims Court? You could. The claim can be transferred in the interest of justice, but in this case there is no contract between the plaintiff, Dr. McIntyre, and the United States. So there is no contract claim. Just as there's been no contract even presented here for the court to consider. So there is no contract claim to consider between the United States and Dr. McIntyre. So transfer would be not in the interest of justice. Another way that he attempts to establish concurrent jurisdiction is through the National Defense Authorization Act. By the way, as long as we're talking about contracts, you referred to contract between Dr. McIntyre and the United States. What about this contract between IHS and VISTA? Was there a contract between? Yes, there is a contract between IHS and VISTA. But we don't have that either. We do not. It's not been placed at issue. There's no allege by either IHS or VISTA that either party to that contract has breached that contract. So it's really not at issue for the court to consider this time. And then other than the Tucker Act arguments, as I understand it, you're saying it's a sovereign immunity situation. The appellant has a list of various and sundry statutes. One thing I was curious about in your brief, though, because it seems like you're saying that Dr. McIntyre, under those statutes, fails to state a claim under the various statutes and that we lack jurisdiction. Isn't it just that we lack jurisdiction? I didn't understand why you even needed to get into whether he stated a claim or failed to state a claim. It's both. If he had exhausted some of the administrative remedies that he alleged, then the court would have jurisdiction. But as he has failed to even allege that he exhausted administrative remedies for all but a supposed violation of the National Defense Authorization Act, there's a lack of jurisdiction and he has failed to state a claim as well. So they're alternative arguments? Pardon? They're alternative arguments? Yeah, they're alternative arguments, yes, Your Honor. Well, what's the sequencing of our analysis if there's no jurisdiction? Wouldn't we just stop at 12b-1? Yes, you should. Thank you. The National Defense Authorization Act only allows suit against the United States. It only allows suit against a contractor, subcontractor, grantee, subgrantee, or personal services contractor. It does not allow suit against the United States. It specifically limits a de novo suit in the federal district court against those types of entities, and it does not allow for a suit against the United States. So he has attempted to exhaust his remedies under that provision as well, under the National Defense Authorization Act, and he has not been successful. There's been no exhaustion of remedies for that as well. Similarly, the Defense Contractor Whistleblower Protection Act has a similar requirement that a complaint be made and administrative remedies be exhausted. But then once those administrative remedies are exhausted, a suit may be filed only against a contractor, subcontractor, grantee, subgrantee, or personal services contractor. Again, not the United States of America. The next basis for jurisdiction that he alleges is the Whistleblower Protection Act. The Whistleblower Protection Act does not apply because it only applies to those who are employees of the United States or applicants for employment. He alleges on page 5, or he states on page 5 of his appeal, that he is an independent contractor of VISTA staffing services, not an employee of the United States. So again, the Whistleblower Protection Act does not apply to give this court concurrent jurisdiction to allow the case to proceed in federal district court. Similarly, the Medicare Act, there are allegations of violations of the Medicare Act. There are administrative exhaustion requirements that must be met for the Medicare Act, as well as he alleges basis for jurisdiction for violations of federal law. There's no right for an individual to enforce federal criminal law against the federal government. Similar provisions of the Affordable Care Act and allegations of discrimination, there's no allegation in this case that he has provided any or there has been any discrimination or that the plaintiff is a member of a protected class. And finally, his basis is the final basis he alleges for jurisdiction is the Bid Procurement Act. And again, he is not a bidder in any case. And there are exhaustion requirements for that as well. And finally, of course, that those remedies would also be only properly sought exclusively in the court of federal claims. So from every angle, there's no basis for the district court to hear this case. There's no basis for jurisdiction against the United States. And unless the court has further questions, I'll yield the rest of my time to my co-defendant. Thank you, Kevin. Good morning. May it please the court. My name is James Peacock, and I'm here today on behalf of Vista Staffing Solutions. We're asking this court to affirm the decision of the district court and dismiss this claim. We've heard about different contracts, but the main contract, the only contract before this court, is the contract between Dr. McIntyre and Vista. And from what we've heard today, what we've seen in the pleadings, Dr. McIntyre is misreading paragraph four of that contract. It does not impose a duty on Vista to investigate. The plain language of that contract makes it clear that what paragraph four establishes, and as the district court pointed out in his opinion, paragraph four establishes the authority of the client, in this case IHS, to immediately terminate a placement upon a finding of either professional misconduct or personal misconduct. And I'm paraphrasing there. How would you, how does the word reasonably in paragraph four, it says that if the client reasonably finds the performance of professional to be unacceptable, how does that affect Vista's termination rights under paragraph 23? It does not, Your Honor. Those are two separate questions. The paragraph four, in terms of what the client's rights are, is completely separate and a separate analysis from what paragraph 23, which is the operative paragraph of this contract, what paragraph 23 allows. And under paragraph 23, Vista has the right to terminate a placement for any reason given by the client, upon receipt of any reason from the client, which we did receive, and I know they refer to it as IHS. And it refers to the client, not Dr. McIntyre, but the client has to reasonably find. Why would that even be in the contract if it doesn't have anything to do with whether Vista can terminate the agreement with Dr. McIntyre? Sure. The language must be in there for some purpose. There is an expectation, according to that contract, that the client would act reasonably, but that doesn't give the impression that Vista would have any ability to investigate the reasons behind the termination. In fact, it's the opposite. It says, Vista, if the client were to find that a separation was required, Vista is only required or is only entitled to notice of that decision, not notice an opportunity to confirm, not notice an opportunity to investigate, just notice. And with that notice, the client, IHS, is entitled to remove Dr. McIntyre immediately, which, as this court pointed out, that is not actually what happened. This was not an immediate removal. And in its termination notice that IHS sent to Vista, they don't reference Paragraph 4 and call for an immediate removal. They reference the federal acquisition regulations and allow for a 15-day separation period, which is required under that regulation. What is your understanding of what the implied covenant requires your client to do under this contract? The implied covenant, Your Honor, requires my client to exercise its rights under the contract in good faith. And we look to the contract to find out exactly what those rights are. But the implied covenant doesn't create additional rights. It doesn't create extra contractual obligations. It only requires that looking at the four corners of this agreement, what are the reasonable expectations of the parties? And in more than one paragraph, it's clear to Dr. McIntyre that he is subject to immediate removal, given certain circumstances. And we would also submit that the notice that we received from IHS does give valid reasons for a separation. A lack of professionalism is a reason to separate from a locum tenens independent contractor. He's not fitting in. He's not behaving the way that IHS would expect a professional to behave. The failure to maintain positive working relationships with hospital staff is likewise a second reason. Those are valid subjective reasons found by IHS that entitle them to end this placement. Well, wasn't there a little more to it than that? Wasn't VISTA aware of Dr. Ritchie's retaliatory motive against Dr. McIntyre when it terminated the agreement? No, Your Honor. There's nothing in the pleading to suggest that VISTA was aware. There is no pleading for that. In fact, in the briefing, it's the opposite. It's the suggestion that VISTA, with no notice, receives this termination letter. VISTA should have questioned, hey, what's going on here? So the opposite is true. VISTA is in the blind here. There's no allegation in the complaint that VISTA was made aware of all of the things that are happening that we know now from what Dr. McIntyre produced with his complaint. Those are after-the-fact revelations. There is no allegation that VISTA had real-time information about what was going on. What VISTA knew was what was contained in the IHS notice, which was lack of professionalism, and also failure to maintain a positive working environment with hospital staff. Well, we've got a little time. I've got another question. Yes, sir. In your view, did Dr. McIntyre waive the breach of contract? Has he waived it? It's hard to tell from the pleading exactly what he's alleging. I'm not talking about the pleading. I'm talking about the opening brief. The opening brief does not clearly challenge the district court's findings for dismissal. I'm not talking about dismissal as a whole, because we've got breach of contract, we've got breach of implied covenant. I'm just talking about breach of contract. Yes, certainly in looking at his pleading, it doesn't directly. Breach. Breach, I'm sorry, yes. It doesn't directly address the breach of contract allegations.  Follow-up, did you waive any waiver of that argument? No, Your Honor. Well, you address it in your response brief. We do address it out of an abundance of caution, just as out of an abundance of caution in the... But you don't say that they waived the argument in your response brief. We do not. We don't raise the waiver issue. That's correct. You mentioned 15 days, that he was kept for 15 days, and what was the reason? A regulation, did you cite? Yes, sir. In the notice of termination, the Indian Health Services contracting officer references the federal acquisition regulations. It's 52, I don't have the exact size. And how does that relate to the contract provisions, as far as immediately or 60 days and so forth? It doesn't. It's just an indication to the court and to the parties that Indian Health Services was not relying on the terms of Dr. McIntyre's contract with VISTA when it made its decision to end the relationship. IHS relied on federal acquisition regulations and gave the required regulatory 15-day notice. Thank you. Thank you, counsel.  Appreciate your arguments this morning. The case will be submitted and counsel are excused.